UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HEATHER OLBERS, Plaintiff,

v. Civil Action No. 3:16-cv-521-DJH

CHARLES THOMPSON and AMERICAN
IRONHORSE MOTORCYCLES OF
HUNTSVILLE, Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant Charles Thompson, a Texas resident, is "the President, sole shareholder and Director" of Walker County Custom Motorcycles, a Texas Corporation. (Docket No. 6-1, PageID # 26, 29; D.N. 11, PageID # 128-29) Walker County Custom Motorcycles does business as Defendant American IronHorse Motorcycles of Huntsville. (D.N. 10, PageID # 115) Jeffrey Goodwin, a Kentucky resident, ordered a motorcycle seat, along with several other items, from American IronHorse. (*Id.*) While Goodwin was riding on this motorcycle seat with his girlfriend, Plaintiff Heather Olbers, the seat became loose, resulting in injury to Olbers. (D.N. 1, PageID # 6–7) Olbers filed suit against Thompson and American IronHorse Motorcycles of Huntsville, alleging that the seat was defective. (*Id.*, PageID # 9–13) The defendants have moved to dismiss the case for lack of personal jurisdiction or, alternatively, failure to state a claim. (D.N. 6) Olbers has filed a motion for leave to amend her complaint to add Walker County Custom Motorcycles as a defendant. (D.N. 8) Because Olbers has demonstrated that the Court has personal jurisdiction over American IronHorse Motorcycles of Huntsville but has not, at this stage, demonstrated that Thompson can be held individually liable, the Court will deny in

1

part and grant in part the defendants' motion to dismiss. The Court will grant Olbers's motion for leave to amend her complaint.

I. BACKGROUND

While looking to purchase a motorcycle seat, Jeffrey Goodwin, a Kentucky resident, visited the website www.americanironhorsehuntsville.com. (D.N. 7-1, PageID # 81) The website advertised the "Air Ride 2-up seat" and instructed interested customers to "Call and talk with Charles about the seats & travel bags to be able to ride & travel with luggage in comfort." (*Id.*, PageID # 82) To make a purchase or inquire about pricing, customers had to email or call Charles Thompson, a Texas resident. (D.N. 6-1, PageID # 29; D.N. 6-2, PageID # 41; D.N. 11, PageID # 128-29)

On May 8, 2014, Goodwin called Thompson and ordered an upgraded "Air Ride 2-up seat" along with several other items for his motorcycle. (D.N. 7-1, PageID # 82) Goodwin's order was shipped to his residence in Cox's Creek, Kentucky. (*Id.*) Goodwin states that upon receiving the seat, he installed it in accordance with the instructions that were provided. (*Id.*)

On August 15, 2015, Goodwin took his girlfriend, Heather Olbers, for a ride on his motorcycle in Marion County, Kentucky. (D.N. 6-1, PageID # 29) While Goodwin was navigating a pothole, the seat allegedly became loose, causing the seat and Olbers to fall off the motorcycle. (D.N. 1, PageID # 6–7) Olbers claims that she suffered injuries to her back, neck, right shoulder, and chest, as well as "multiple abrasions, burns and bruises around her body." (*Id.*, PageID # 7)

On August 15, 2016, Olbers filed suit against Thompson and American IronHorse Motorcycles of Huntsville, claiming (1) negligent sale of defective products; (2) breach of express and implied warranties; (3) negligence per se; and (4) strict liability for defective

products. (*Id.*, PageID # 9–13)  Olbers invoked the Court's diversity jurisdiction. (*Id.*, PageID # 2–4)  Olbers asserted that diversity of citizenship was established because she is a citizen of Kentucky and the defendants are citizens of Texas. (*Id.*)  Olbers also claims that the amount in controversy exceeds $75,000. (*Id.*)

The defendants have filed a motion to dismiss arguing that the Court lacks personal jurisdiction over them and that the plaintiffs have failed to state a claim upon which relief can be granted. (D.N. 6)  The defendants claim that federal due process is not satisfied. (D.N. 6-1, PageID # 38–40)  Additionally, Thompson claims that he cannot be sued personally because American IronHorse Motorcycles of Huntsville is a sole proprietorship, and Walker County Custom Motorcycles, Inc. is the correct Defendant. (*Id.*)  Walker County Custom Motorcycles, Inc. is a Texas corporation and is certified to do business in the state of Texas under the assumed name of American IronHorse Motorcycles of Huntsville. (D.N. 6-3, PageID # 45, 49)

In response, Olbers filed a motion to amend her complaint to add Walker County Custom Motorcycles, Inc. as a defendant. (D.N. 8-1, PageID # 85)  Defendants oppose this motion because they believe that personal jurisdiction is still lacking. (D.N. 10, PageID # 116)

Because the Court found that the parties had not sufficiently addressed the extent of the defendants' commercial contacts with Kentucky, the Court ordered supplemental briefing on that issue. (D.N. 12)  The parties filed simultaneous supplemental briefs on August 14, 2017. (D.N. 13; D.N. 14)  In their brief, the defendants clarified that Walker County Custom Motorcycles has made eighty-two sales to Kentucky residents over the last thirteen years and eight months. (D.N. 13, PageID # 135)

## II. DISCUSSION

### A. Personal Jurisdiction

The burden is on Olbers to demonstrate that personal jurisdiction exists. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). To make this showing, a plaintiff "may not stand on [her] pleadings but must, by affidavit or otherwise, set forth specific facts" demonstrating the Court's jurisdiction. *Id.* When presented with a motion to dismiss for lack of personal jurisdiction, the Court has three options: (1) "decide the motion upon the affidavits alone," (2) "permit discovery in aid of deciding the motion," or (3) "conduct an evidentiary hearing to resolve any apparent factual questions." *Id.* (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

Neither party has requested jurisdictional discovery in this case. Nor does the Court find that there are factual disputes necessitating an evidentiary hearing. Consequently, Olbers's burden is relatively light: "Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Id.* The Court must view the pleadings and affidavits in the light most favorable to the plaintiff, without "weigh[ing] the controverting assertions" of the defendant. *Id.* at 1459. Dismissal is proper only "if all of the specific facts . . . alleged" by the plaintiff "collectively fail[ ] to state a prima facie case for jurisdiction." *Id.*

#### 1. Long-Arm Statute

Federal Rule of Civil Procedure 4(k)(1)(A) provides that personal jurisdiction exists over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). In Kentucky, the Court must first look to Kentucky's long-arm statute to determine whether "the cause of action arises from conduct or

activity of the defendant that fits into one of the statute's enumerated categories." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). If the long-arm statute is applicable, the Court must then apply the traditional test "to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id.*

Olbers relies on Kentucky Revised Statutes § 454.210(2)(a)(2) and (5) to assert personal jurisdiction. (D.N. 7, PageID # 75) Those subsections provide that

> [a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's: . . .
>
> 2. Contracting to supply services or goods in this Commonwealth; . . . [or]
>
> 5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

Ky. Rev. Stat. § 454.210(2)(a).

With respect to § 454.210(2)(a)(2), the Kentucky Supreme Court has held that "[a] plain reading of the statutory language produces the interpretation that the contract need not be made or executed 'in this Commonwealth,' but, rather, only that the contract provide for the supplying of services or goods to be transported into, consumed or used in Kentucky." *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011). In *Hinners*, a Kentucky resident purchased a vehicle from a Missouri resident through the internet auction website eBay. *Id*. at 893. The Kentucky Supreme Court concluded that because "it was anticipated by the parties from the outset that the vehicle would be transported to and used in Kentucky," section (2)(a)(2) of the Commonwealth's long-arm statute authorized adjudication. *Id*. at 896.

5

Similarly, in *Advanced Solutions Life Sciences, LLC v. BioBots, Inc.*, a researcher at the University of Louisville emailed BioBots, a Delaware corporation with its principal place in Pennsylvania, to inquire about its 3-D bioprinter after seeing the machine at a conference in Boston, Massachusetts. No. 3:16-CV-00709-CRS, 2017 WL 2114969, at *1–2 (W.D. Ky. May 15, 2017). Following a telephone call to BioBots, the researcher purchased a bioprinter for the University. *Id.* at *2. Advanced Solutions Life Sciences filed suit in Kentucky, alleging that BioBots was infringing on its trademark and competing unfairly. *Id.* Although BioBots had sold only one bioprinter to a Kentucky resident, the Court held that the long-arm statute was satisfied because the claim arose out of BioBots's contract to supply the bioprinter to a customer in Kentucky. *Id.* at *3–4.

In this case, Goodwin, a Kentucky resident, contacted a Texas-based business to purchase a motorcycle seat. (D.N. 7-1, PageID # 82) The parties entered into a contract for the motorcycle seat, and it was anticipated by the parties that the motorcycle seat would be shipped to and used in Kentucky. (*Id.*) Therefore, as in *Hinners* and *BioBots*, section (2)(a)(2) of Kentucky's long-arm statute authorizes subjecting the defendants to adjudication in the Commonwealth as long as Olbers's claim arose out of the contract for the motorcycle seat. *See BioBots*, 2017 WL 2114969, at *3; *Hinners*, 336 S.W.3d at 896.

The Kentucky Supreme Court has defined "arising from" to mean that the claims "originate[d] from the actions or activities" of the defendant. *Caesars*, 336 S.W.3d at 58. In other words, there must be a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." *Id.* at 59.

For example, in *Dierig v. Lees Leisure Indus., Ltd.*, the plaintiff, a Kentucky resident, was interested in purchasing a tent trailer to be pulled behind his motorcycle from Lees Leisure, a

6

Canadian company. No. 11-125-DLB, 2012 WL 669968, at *1 (E.D. Ky. Feb. 28, 2012). The company's website and brochure directed the plaintiff to contact the nearest distributor, which was in South Carolina. *Id*. The plaintiff met the distributor in North Carolina where the parties executed a Bill of Sale and Certificate of Origin. *Id*. Both documents listed the plaintiff's address in Kentucky. *Id*. The plaintiff alleged that while he was driving his motorcycle with the tent trailer attached "the latch holding the trailer lid in place became unfastened" because of a defect, causing him to crash his motorcycle and leading to serious injury. *Id*. at *2. The court found that the plaintiff's claims arose from the contract to supply goods under Ky. Rev. Stat. § 454.210(2)(a)(2) because there was a "reasonable and direct nexus" between the plaintiff's injuries and the allegedly defective product. *Id*. at *9.

Similar to the plaintiff in *Dierig*, Goodwin called to order a product from an out-of-state company and informed the seller that he resided in Kentucky. (D.N. 7-1, PageID # 82) Further, as in *Dierig*, Olbers alleges that her injuries were caused by a defective product sold to a Kentucky resident by the defendants for use in Kentucky. (D.N. 1, PageID # 3) Therefore, Olbers has demonstrated a "reasonable and direct nexus" between her injuries and the allegedly defective seat. *Caesars*, 336 S.W.3d at 59.

Because Olbers's cause of action is covered by one of the statute's enumerated categories, the Court will proceed "to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Caesars*, 336 S.W.3d at 57; *see BioBots*, 2017 WL 2114969, at *4.

### 2. Federal Due Process

To satisfy a due process analysis, Olbers must "establish with reasonable particularity sufficient 'minimum contacts' with [Kentucky] so that the exercise of jurisdiction over [the

defendants] would not offend 'traditional notions of fair play and substantial justice.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Due process limits the Court's exercise of both general and specific personal jurisdiction. General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit," whereas specific jurisdiction is based on a connection "between the forum and the underlying controversy." *Walden v. Fiore*, 134 S. Ct. 1115, 1120 n.6 (2014). Olbers relies on specific jurisdiction in this case. (D.N. 1, PageID # 4)

For a court to exercise specific jurisdiction consistent with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden,* 134 S. Ct. at 1121–22. A plaintiff must show that the relationship between the defendant and the state arises "out of contacts that the defendant himself creates with the forum State," and the relationship must be based on the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1121–23 (citation omitted).

The Sixth Circuit applies a three-part test to determine whether a court's exercise of specific jurisdiction is consistent with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *see, e.g.*, *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014) (applying *Mohasco* test).

The defendants argue that they have not purposefully availed themselves of the privilege of doing business in Kentucky because neither Thompson nor American IronHorse Motorcycles

8

of Huntsville has "ever had a physical presence in Kentucky" or had employees or agents in Kentucky. (D.N. 6-1, PageID # 36) Olbers asserts that the defendants purposefully availed themselves by having customers call the defendants in Texas and selling the motorcycle seat and other items to Goodwin, a Kentucky resident, for use in Kentucky. (D.N. 7, PageID # 71–77)

A defendant purposefully avails himself when he "personally takes actions that create a 'substantial connection' with the forum state such that he can 'reasonably anticipate being haled into court there.'" *SFS Check*, 774 F.3d at 356 (citing *Neogen Corp.*, 282 F.3d at 889). This requirement guarantees "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "The Supreme Court has emphasized, with respect to interstate contractual obligations, that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 473).

"Courts have repeatedly held that as little as a single transaction can establish purposeful availment, particularly in cases involving a non-resident seller and a resident buyer." *Advanced Sols. Life Scis.*, 2017 WL 2114969, at *6 (citing *Am. Trade All., Inc. v. S. Cross Trading, Inc.*, No. 2009-CA-001353-MR, 2011 WL 112439, at *2 (Ky. Ct. App. Jan. 14, 2011); *First Nat'l. Bank v. Shore Tire Co.*, 651 S.W.2d 472, 473 (Ky. Ct. App. 1982)). "But the crucial distinction appears to be who reached out to whom." *Id.* (citing *CAPP Mgmt., LLC v. Alton Coal Dev., LLC*, No. 11-93-HRW, 2013 WL 1314052, at *4 (E.D. Ky. Mar. 26, 2013); *Spectrum Scan, LLC v. AGM Cal.*, 519 F. Supp. 2d 655, 658 (W.D. Ky. 2007)).

In *Neogen*, Neogen Corporation, a Michigan corporation, filed suit in Michigan against Neo Gen Screening, Inc. (NGS), a Pennsylvania corporation, alleging trademark infringement, unfair competition, and other related claims. *Neogen Corp.*, 282 F.3d at 886. NGS "perform[ed] diagnostic testing of blood samples from newborn infants." *Id*. While ninety percent of NGS's business was through contracts with hospitals and government agencies that were not located in Michigan, the remaining ten percent of its business was based on individual requests. *Id*. Individual customers could obtain testing materials by calling or emailing NGS to request "filter blood collection forms" and mailing a check to NGS's Pittsburgh office. *Id*. at 886–87. NGS would mail these forms to the customer, who would collect the sample and send it back to NGS in a preaddressed envelope. *Id*. The customer could obtain the test results either through the mail or on NGS's website with a password provided by NGS. *Id*. NGS's "only continuous advertising" was its website, which passively posted information and "provide[d] information about NGS's services, list[ed] the e-mail addresses of personnel, and allow[ed] prospective customers to print blood-collection forms to be mailed along with blood samples to Pittsburgh." *Id*. at 887. NGS had tested fourteen blood samples from Michigan residents that year and anticipated testing approximately the same number the next year. *Id*.

The Sixth Circuit held that NGS purposefully availed itself of the privilege of doing business in Michigan. *Id*. at 890. According to the Sixth Circuit, "[a] defendant purposefully avails itself of the privilege of acting in a state if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Id*. Because NGS's website was passive, the Sixth Circuit explained that NGS's website on its own might not be enough to sustain personal jurisdiction. *Id*. at 891. However, "the website [was] not [NGS's] only contact with the state." *Id*. Rather, "[t]he website must be considered alongside NGS's other

interactions with Michigan residents." *Id*. "Most significantly, when potential customers from Michigan have contacted NGS to purchase its services, NGS has welcomed their individual business on a regular basis." *Id*. Emphasizing NGS's fourteen yearly contracts with Michigan residents, the Sixth Circuit concluded that NGS's contacts with Michigan were not random and fortuitous. *Id*. at 891–92.

The Sixth Circuit distinguished *Neogen* from *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F. 3d 147 (6th Cir. 1997). *Id*. The Sixth Circuit provided the following summary of *Kerry Steel*:

> In *Kerry Steel,* the defendant, an Oklahoma corporation, received unsolicited telephone calls from the plaintiff, a Michigan corporation, offering to sell the defendant a large quantity of steel coils. The defendant agreed to purchase the coils. After the defendant failed to pay for them, the plaintiff then attempted to bring suit in Michigan. The district court dismissed the complaint for lack of personal jurisdiction. In affirming the dismissal, this court concluded that the acceptance of a single unsolicited sales offer did not constitute the defendant's "reaching out" to Michigan to establish "continuing relationships and obligations" there.

*Neogen*, 282 F.3d at 891. The *Neogen* court found that "[u]nlike the one-time, unlikely-to-be-repeated Michigan transaction executed by the Oklahoma defendant in *Kerry Steel*, NGS reasonably expect[ed] to conduct a given level of business in Michigan year after year." *Id.* Therefore, the Sixth Circuit held that Neogen had demonstrated that NGS intended to maintain "continuing relationships and obligations" in Michigan. *Id*. (citing *Burger King*, 471 U.S. at 476).

In another example, in *Lexmark International, Inc. v. Laserland, Inc*., Lexmark filed a patent-infringement suit in Kentucky against Laserland, a Michigan corporation. 304 F. Supp. 2d 913, 914 (E.D. Ky. 2004). Laserland operated a website that allowed consumers to buy the allegedly infringing product. *Id*. at 916–17. While Laserland sold only one infringing product to a Kentucky resident, the company had "sold various other products to Kentucky residents over

11

the . . . years." *Id*. at 917. The Court concluded that "[b]y choosing to sell its products to Kentucky residents, Laserland purposefully availed itself of the privileges of doing business in Kentucky." *Id*. at 918.

The present case is more akin to *Neogen* and *Lexmark* than *Kerry Steel*. As in *Neogen*, the defendants here maintained a website that did not allow orders through the site but instead invited customers to contact the company by phone or email. 282 F.3d at 887. While the website did not facilitate internet sales, it provided information regarding available products and contact information. (D.N. 7-1) It also offered information on shipping. While the defendants' website alone may not be sufficient to establish personal jurisdiction, it must be considered along with the record of the defendants' contacts with Kentucky residents. *See Neogen Corp.*, 282 F.3d at 891. The defendants have made eighty-two sales to Kentucky residents over nearly fourteen years. (D.N. 13, PageID # 135) These sales indicate that the defendants welcomed the business of Kentucky residents on a fairly regular basis. *See Neogen*, 282 F.3d at 887. Unlike *Kerry Steel*, the sale to Goodwin is not an isolated transaction that is unlikely to be repeated; rather, the defendants have an ongoing relationship with customers in the Commonwealth and appear intent on continuing that relationship. *Cf.* 106 F.3d at 151. Therefore, the Court finds that the defendants purposefully availed themselves of the privilege of doing business in Kentucky.

Because the first prong of the *Mohasco* test has been satisfied, the Court will proceed to the second and third prongs. *See* 401 F.2d 374, 381. As discussed earlier, Olbers has demonstrated that her cause of action arises out of the defendants' activities in Kentucky. Therefore, the second prong of the *Mohasco* test is met. *Id*.

Finally, the Court considers whether exercising jurisdiction over the defendants is reasonable under the circumstances. *Id*. The Sixth Circuit "has stated that when the first two factors are met, a presumption arises that the exercise of jurisdiction would be 'reasonable' under the third factor." *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 115 (6th Cir. 2005) (citing *Third Nat'l Bank v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1092 (6th Cir. 1989)). In assessing reasonableness, the Supreme Court has held that the Court must consider the following factors: (1) "the burden on the defendant," (2) "the interests of the forum State," and (3) "the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987). The Supreme Court has also instructed courts to weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980)).

In this case, exercise of personal jurisdiction over the defendants is reasonable. First, other than having to travel to the forum state, the burden on the defendant is no more than any defendant would bear during litigation. Second, because a Kentucky resident was injured by a nonresidents who purposefully availed themselves of the privilege of doing business in Kentucky, the Commonwealth has an interest in resolving this case and the plaintiff has an interest in obtaining relief. *See Third Nat'l Bank*, 882 F.2d at 1092. Finally, the judicial system's interest in efficiency favors Kentucky because the incident occurred in Kentucky and Olbers's claims arise under Kentucky law.

In sum, the Court concludes that Olbers has demonstrated that personal jurisdiction exists over the defendants in Kentucky.

### B. Failure to State a Claim

In their motion to dismiss, the defendants also argue that Olbers has failed to state a claim against Charles Thompson. (D.N. 6-1, PageID # 31) Thompson argues that under both Texas and Kentucky law, "corporations are separate legal entities from their shareholders, officers, and directors," and thus he is not personally liable for Olbers's injuries. (*Id.*, PageID # 33)

Olbers responds that American IronHorse Motorcycles of Huntsville is not "an authorized pseudonym" for Walker County Custom Motorcycles; therefore, the Texas and Kentucky laws cited by Thompson do not apply. (*Id.*) Thompson points to documentation from the Texas Secretary of State that shows that he filed the proper paperwork to operate his corporate entity under the name "American IronHorse Motorcycles of Huntsville." (D.N. 6-2, PageID # 41–43; D.N. 6-3, PageID # 44-50; D.N. 9, PageID # 103–04)

The Court takes judicial notice that Walker County Custom Motorcycles is registered with the Texas Secretary of State as a Texas corporation and does business under the assumed name American IronHorse Motorcycles of Huntsville. (D.N. 6-2, PageID # 41–43; D.N. 6-3, PageID # 44-50) *See Taylor v. Mosely*, No. 3:11CV-27-M, 2011 WL 381805, at *1 (W.D. Ky. Feb. 1, 2011) (taking judicial notice that a defendant was a Kentucky corporation and registered with the Kentucky Secretary of State). Therefore, Walker County Custom Motorcycles and American IronHorse Motorcycles of Huntsville appear to be legitimate business entities, and Olbers must pierce the corporate veil for Thompson to be individually liable. *See Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 735–36 (6th Cir. 2003).

With respect to piercing the corporate veil, Kentucky courts follow the Restatement (Second) of Conflicts of Laws § 307 (1971), which states that "[t]he local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to

the corporation for assessments or contributions and to its creditors for corporate debts." *See Duracore Pty Ltd. v. Applied Concrete Tech., Inc.*, No. 5:13-CV-184-TBR, 2016 WL 3620793, at *8 (W.D. Ky. June 28, 2016); *EiA Props., LLC v. Fenwick Equestrian, LLC*, No. 5:14-CV-328-REW, 2015 WL 5698540, at *3 (E.D. Ky. Sept. 28, 2015); *Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 467–68 (Ky. Ct. App. 2012). Because Walker County Custom Motorcycles is incorporated in Texas, Texas law applies to the question of corporate veil piercing.

Under Texas law, "in cases involving a corporation's contractual obligations," a shareholder is not individually liable unless the plaintiff can show actual fraud. *Allied Chem. Carriers, Inc. v. Nat'l Biofuels LP*, No. CIV.A. H-10-1109, 2011 WL 2672512, at *3 (S.D. Tex. July 7, 2011) (alterations omitted) (citing Tex. Bus. Orgs. Code § 21.223(a)(2); *Acceptance Indem. Ins. Co. v. Maltez*, 619 F. Supp. 2d 289, 301 (S.D. Tex. 2008); *Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006). For Olbers to prove actual fraud, she must demonstrate "dishonesty of purpose or intent to deceive," and the fraud must be "related specifically to the contract at issue." *Id*. (citing *Rutherford v. Atwood*, No. 01-00-0013-CV, 2003 WL 22053687, at *4–5 (Tex. Ct. App. Aug. 29, 2003); *Menetti v. Chavers*, 974 S.W.2d 168, 173–74 (Tex. Ct. App. 1998)). At this stage, Olbers has not alleged dishonesty or deception with respect to the sales contract between American IronHorse Motorcycles of Huntsville and Goodwin. Further, there is nothing in the record that would suggest fraud. Because the plaintiff has not alleged facts to support piercing the corporate veil, she fails to state a plausible claim for relief against Thompson.

### C. Leave to Amend

Olbers seeks leave to amend her complaint to add Walker County Custom Motorcycles, Inc. as a party because her claims relate to both the corporate entity, Walker County Custom Motorcycles, and its alter ego, American IronHorse Motorcycles of Huntsville. (D.N. 8, PageID # 83) The defendants argue that the proposed amendment is futile and should be denied because the Court lacks personal jurisdiction over Thompson and American IronHorse Motorcycles of Huntsville, and by extension, Walker County Custom Motorcycles. (D.N. 10, PageID # 117–20) As explained above, however, the Court has personal jurisdiction over Thompson and American IronHorse Motorcycles of Huntsville. *See supra* Part II.A.

Moreover, because personal jurisdiction is a personal defense, a proposed amendment should not be denied "on the basis of the preemptive assertion of lack of personal jurisdiction" by another defendant. *Afshari v. Bear Archery, Inc.*, No. CIV.A. 12-13-KSF, 2012 WL 3027649, at *3 (E.D. Ky. July 24, 2012) (rejecting defendant's assertion of personal jurisdiction defense on behalf of putative defendants in opposition to motion for leave to amend).

Rule 15(a) provides that leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). Because the defendants have not shown that the Olbers's proposed amendment is futile, the Court will grant Olbers's motion to amend. (D.N. 8)

### III. CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The defendants' motion to dismiss (D.N. 6) is **GRANTED in part** and **DENIED in part**. The defendants' motion to dismiss claims for lack of personal jurisdiction is **DENIED**

as to American IronHorse Motorcycles of Huntsville. Defendant Charles Thompson's alternative motion to dismiss the claims against him for failure to state a claim is **GRANTED**. The claims against Charles Thompson are **DISMISSED** without prejudice.

  (2) The plaintiff's motion for leave to amend the complaint (D.N. 8) is **GRANTED**. The Clerk is **DIRECTED** to file the amended complaint (D.N. 8-1) in the record of this matter.

August 25, 2017

                 **David J. Hale, Judge**
                **United States District Court**